The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this honorable court may give their attendance and they shall be heard. God save the United States of America and this honorable court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Eric LeVar Adams, appeal number 181465. Good morning. Ms. Teresi, could you please identify yourself for the record? Good morning, your honors. My name is Mary June Teresi and I am representing Eric LeVar Adams in this matter. And are you ready to proceed? I am, your honor. All right. Ms. Thornton. Thank you, your honor. This case is essentially about Mr. Adams' right to be free from unlawful government intrusion into his private life. This case is concocted factually and I am going to develop the facts as I raise each issue. He was charged by way of a superseding indictment in count one with the conspiracy to possess with intent to distribute and to distribute various controlled substances. The time period alleged in that conspiracy is significant. The government alleges that the conspiracy took place from December of 2014 up through January 7th of 2016. Mr. Adams had filed numerous motions to suppress in this matter along with a motion to withdraw his guilty plea. He would like me to have the court focus on just a couple of the motions that were filed on his behalf. And specifically, one of the motions that was filed was a motion to suppress the search of cell phones that were recovered from an automobile that he had been operating. And those phones were seized pursuant to a warrant to search that vehicle. Ms. Cerise, it's my understanding that any information that was on those phones was not used at trial. Is that not correct? Well, this matter did not go to trial, your honor. Mr. Adams pled shortly before trial. But pursuant to the plea, the government submitted a statement of facts. The statement of facts did not contain any evidence concerning those cell phones. So what? The cell phones, though, did lead, did assist in the remainder of this investigation. And then this 2014 stop appears in subsequent affidavits in application for a search warrant. How did the cells themselves lead to other information? That I do not know. It was not apparent from the record, your honor. And it wasn't alleged in the motions. Well, if it's not apparent from the record, then what's the thrust of your claim on appeal? What is the prejudice that you can show from even assuming arguendo that there was a question with the warrant? If there's no evidence from the cell phones used against the defendant, nor any showing that matter on the cell phones led to evidence that was used, somehow used against them, what difference does it make about the warrants? Because there may have been evidence that would have been produced at a trial on the matter. But there may have been evidence which you can't identify or enumerate? That's correct, your honor. On authority, is that enough to allow the granting of a motion to suppress? Well, I think it is, your honor, to have the probable cause determination reviewed Well, did you seek to get information about the contents of the phones in discovery? Your honor, I was not the attorney in the lower court. Some discovery was provided to me, but it did not appear within the records that I received from the lower court. Not in the body of the motions, nor in any of the transcripts. But I believe that the suppression of the cell phones was part of a foundation which led to pursue this investigation. I guess I'm having a hard time trying to figure out how, if we don't know the contents of the phone. Well, they're alleging that the whole reason why they wanted to search the phone was because of the quantities of the phone, I believe, your honor. And just that fact, they believe that people who are engaged in drug trafficking often possess multiple cell phones. So, that would be another, if the fact that that was suppressed because the warrant was defective. There are five minutes remaining. Thank you. Are you saying that the fact of the multiple phones should be suppressed, or the contents of the phone? Well, the contents of the phone, your honor. The idea that that might have affected his plea calculus? If he knew that they would have access to the content of the phones at trial, that would make him more likely to plea? If he knew that that was suppressed, it would be less likely he would plea? That's the theory, your honor. I wish I could point to something in the work, but that is certainly the theory. If I may, another issue that Mr. Adams wanted raised was the fact that he tried to withdraw his guilty plea. And, again, there were a lot of motions to suppress filed, and he had continuously asserted the right that he wanted to go to trial. He says that shortly before trial, and shortly before jury selection, he was presented with a new offer to resolve the case. And the record indicates that there had been... Excuse me, Ms. Cerici. When you say a new offer, that offer was the culmination of a series of negotiations that had gone on for several weeks, if not months. Isn't that so? That is correct, your honor, and those prior offers had all been rejected by Mr. Adams. Alright, but in other words, this wasn't an offer out of the blue. This was a continuing series of negotiations between the government and the defense that had gone on for weeks or months. That's correct. Okay. And now, as they're getting closer to trial and closer to jury selection, a new offer is... I think the final offer, as your honor just said, it culminated in a final offer that was presented to Mr. Adams, who indicated to the court in his motion to withdraw that he had only had approximately 90 minutes to consider that plea. And he has alleged that he is legally innocent. He did mention that to the judge. He mentioned that to the judge when? Not at the point when he pleaded? No, sir. When he brought the motion to withdraw the plea and there was a hearing before the court, he had said that he was legally innocent. And those are my words. I'm not quoting verbatim. And also, his lawyer had argued to the court that he had consistently claimed that he was legally innocent of the charges. Now, to say that... In the plea colloquy, he unambiguously admitted that he was guilty and admitted to specific crimes and the truth of specific allegations. That is correct, your honor. And he is alleging that it was not an intelligent plea. He knew what was going on and there's no Rule 11 violation. All... You know, the I's were dotted, the T's were crossed, but he indicated that certain evidence wasn't presented to him before he entered his guilty plea. What evidence was that? Evidence that an informant had been terminated, but in some of the affidavits submitted by law enforcement, it created the appearance that the informant was available to testify. Wasn't he aware of that before he entered the plea? Yes. Because I thought it was in one of his motions to suppress. One of the motions to suppress, but then subsequent to that, and as they... He said he received Jenks material or the lawyer received Jenks material shortly before the change of plea. And that information had not been shared with Mr. Adams. And the fact that he didn't know that there were other factual basis that would support his claims, that it couldn't have been an intelligent plea. And I know that in and of itself, the fact that he didn't have the benefit of all discovery, that in and of itself is not enough to warrant a person to vacate their guilty plea. But when you look at all the factors that have been raised in terms of his guilty, he was afraid of a life sentence. He didn't have considerable time. What was the Jenks material? What was the specific material that was new that he received? From my understanding, it was affidavits and testimony from federal agents that were involved in the case. This was a joint investigation between state officials and federal officials. You may complete your answer, please. It was a joint investigation. And Mr. Adams alleges that some of the statements, in particular statements that revealed that an informant had been using drugs more than believed and had been terminated. Not only terminated, but unavailable because an agent had lost contact with this informant. That that was important information that would have influenced his guilty plea, claiming that he would not have entered this guilty plea had he known all that information in advance. But I thought he did know it in advance because it was in one of his motions. One of the motions deals with, the initial motions, your honor, dealt with affidavits by an agent Medeiros who worked for the Bidford Police Department. Months after he pled guilty, his lawyer brought a motion to reconsider the judge's denials of those rulings. And in that motion, he mentioned that there was a federal agent, Richard Hatch, that had more information about one of the informants that was involved in the case. All right, any other questions from my colleagues? No. I just have one question, which is, am I right that in all of those suppression motions, no challenge was made to the stop? That is correct. Okay, thanks. Thank you, your honor. Thank you, counselor. Now, I believe I, I'm sorry, I mute and video, so. Please mute your audio and video and attorney Block should unmute his audio and video. Good morning, may it please the court, Benjamin Block for the United States. There are a number of Fourth Amendment claims that have been raised by the defendant here, and I think that it might be helpful to the court to identify precisely which ones the government views as waived, and which ones the government views as appropriate for resolution on the merits. The first is the initial stop of the vehicle. That was waived. It was not raised below. It was not preserved in the conditional plea. And so despite the effort expended in the briefing before this court, that should be treated as waived. The search of the vehicle and the seizure of the cell phones was also waived. It was raised below. It was preserved in the conditional plea, but it was not briefed either in the counsel brief or the pro se brief in this matter. The search of the phones themselves, the government views as appropriately preserved and briefed for resolution. The search of the apartment in Connecticut was preserved and appropriately briefed. The challenge to the arrest warrants or the arrest warrant, which was only the subject of challenge below in the motion for reconsideration, which came months after the defendant's guilty plea, was untimely at the time of its filing in the district court. It was not preserved as part of the conditional plea because it came months after the plea, and therefore the government views that issue as waived. The challenge to the probable cause to search the hotel room was waived. It was not raised below in the same manner that it was presented here on appeal. Below, they challenged only the probable cause to support the no-knock provision of that warrant. They did not challenge probable cause as to the hotel room itself, and so their attempt to challenge substantively the probable cause. Mr. Black, you say that warrant. There were two separate warrants, weren't there? One for arrest and one for search? Yes, the arrest warrant was not challenged until the motion for reconsideration. Right, but there was also a search warrant for the hotel room. There was a search warrant for the hotel room, which was actually a search warrant to enter the hotel room to search for Adams himself to execute. They didn't challenge the probable cause to enter the hotel room. Generally, they only challenged probable cause as to the no-knock provision of that warrant. They also did not raise a Franks issue with respect to that warrant, even though on appeal it indicated that they had. So we view that as waived. With respect to the no-knock provision, that was preserved below. It was preserved in the conditional plea, but the government would say that the briefing on that issue was undeveloped before this court and therefore should be deemed waived. They simply did not explain in any way how that provision of the warrant was defective or why that should lead to suppression. And finally, there was the search of the storage unit, which was challenged below. They did not raise a Franks issue as to that warrant, but as to the substance of the probable cause based on the effort expended in the pro se brief, the government views that as preserved and argued before this court. So I think that lays out where we stand procedurally. With respect to the issue raised in- Excuse me. I didn't hear you. Maybe I missed it. Speak about the Connecticut apartment. Yes. We view the Connecticut apartment warrant as having been properly preserved. Okay. All right. So with respect to the cell phones, I, too, am confused by the effort Mr. Adams has made here to contest those warrants because they truly served no ongoing purpose in the investigation. Well, see, how do we know that? I mean, he's got five cell phones. There's apparently some extensive history of calls on those five phones that becomes available to the government by reason of those warrants. The government apparently thought that was a good investigatory tool, and the investigation proceeds from that point. And what is puzzling me is that from the record that we have, we really can't tell to what extent whatever the government learned from the search of those cell phones actually contributed to its investigation or to Mr. Adams' decision to enter a guilty plea. So against whom does the absence of evidence of those connections cut in this case? Or is there evidence of those connections? Because I couldn't tell from what I know about the case at this point what the government discovered or didn't discover as a result of the cell phone search. In answering Judge Selye, could you explain to us why that information wasn't disclosed? There are five minutes remaining. That information was disclosed, Your Honor. The results of the searches of the cell phones were produced to the defendant in discovery after his arrest and indictment. And in terms of how to determine what, if any, impact the search of those phones had on the ongoing investigation, I would suggest, and I laid this out in the factual section of my brief, following the car stop and the search of the cell phones, there was a lull in the investigation from December until the following October, where, because it was such a miss, essentially, on that car stop, they did not obtain drugs, they did not obtain useful information from the cell phones, they essentially, the investigation dies down. And it's not until the following October when informants again start to identify Mr. Adams as a player in the Biddeford drug scene. And that's laid out in Officer Medeiros' search warrant affidavit for the hotel room, and I believe also in the arrest warrant affidavit, where he summarizes the investigation from October until December and explains how they essentially regenerated the investigation. And so the information from the cell phones was produced, but it was not meaningful. And the absence of information from those cell phones in any of the subsequent warrants throughout the investigation, I think is indicative that it simply was not useful information. Two questions on that. One, for purposes of the conditional plea, the consequence of the suppression arguably would be that he wouldn't have pled, right? Correct. So we usually take a pretty deferential position as to a defendant's calculus if they could suppress evidence, whether that would affect the plea calculation. And I guess why we shouldn't do that here. In other words, he got the evidence of the search. He makes an assessment of whether that evidence would be a problem for him at trial. So that's going to affect his plea calculation. He wants to suppress it. He made the plea conditional on the suppression succeeding. If it succeeds and he's right about it should be suppressed. Why wouldn't that provide a basis for concluding? Well, he's made the judgment that he doesn't want to. He'll go to trial if he can keep that evidence out. He won't go to trial if it comes in. Well, in order to put forward, in other words, for us to assess how it would affect his plea calculations. Well, I would argue that if you look at his motion to withdraw and you look at his testimony during the hearing on the motion to withdraw, he does not articulate that the. He lost his motion at that point. This is if he wins the suppression motion. Yes, but a defendant's calculation as to the strength of the government's case is not outcome determinative with respect to a motion to withdraw. No, I'm talking about the motion to withdraw. I'm talking about the conditional plea is conditional on a suppression motion. We're trying to figure out what the impact of suppressing the phones would be. But in the context of a conditional plea, why wouldn't we say, well, he's made the judgment that he saw what you got from the phone and he nonetheless wanted to condition the plea on suppressing it. If he's right that it should be suppressed, why wouldn't we assume he knows what he's doing? He therefore wouldn't have fled. Oh, I think under the terms of the conditional plea, which is predicated on the district court suppression of the cell phones. If this court were to find that the information from the cell phones should have been suppressed, then yes, under the conditional plea, he's entitled to. Well, if that's so, then it doesn't matter how useful the information was. The condition of the defendant's plea was that if the search warrants for the five cell phones had been erroneously granted, the condition for his plea would not be fulfilled and he would be able to go to trial. There's no condition that says that the information has to be useful in the government's opinion. Correct. I don't believe harmless error analysis applies in this situation. I was simply responding to the discussion that was had earlier with counsel for Mr. Adams about the usefulness. But yes, I agree. That's time. Could I ask you just about the motion to withdraw? And if you could just comment on the assertion by your opponent that there was new evidence in the Jenks material that would be materially relevant to how likely the informant would be to be available that could have meaningfully affected the decision to withdraw. Yes, thank you for giving me the opportunity to comment on that. There was no new evidence. First of all, it was clear from the face of the warrants themselves that the arrest warrant omitted the fact that this confidential informant had been terminated. The warrant to search the hotel room, which was issued the following day, contained the information that that informant had been terminated by law enforcement. So on the face of the warrants themselves, which were produced early on and were the subject of motions to suppress, Mr. Adams was aware and should have been aware that that confidential informant had been terminated. With respect to the Jenks material, defense counsel was given the opportunity to review all of the witness information, all of the Jenks in February in advance of the trial, which was scheduled for June. So he reviewed them in the office. Then those materials were produced three weeks before jury selection, so in early May. And Mr. Adams and his attorney had three weeks to review those materials before he ultimately pled guilty. So there's simply no basis for him to suggest that that information was not available to him at the time that he entered his plea. All right. Any other questions for my colleagues? No. Thank you, Counselor. Thank you. That concludes the argument in this case. Attorney Ceresi and Attorney Block, you should disconnect from the hearing at this time.